**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRYSTAL SHRINER** | : | **CIVIL ACTION NO.**　21-66 |
| **Mount Union, PA** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OIL CITY AREA SCHOOL DISTRICT** | : | |
| **825 Grandview Road** | : | |
| **Oil City, PA 16301** | : | |
| | : | |
| **Defendant.** | : | |

_____

## **COMPLAINT**

1.　　　Former Oil City Area School District ("OCASD" or "District") student, Crystal Shriner ("Ms. Shriner" or "Shriner"), brings this action against the Oil City Area School District pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, to redress permanent, life-altering injuries she suffered as a result of the District's failure to protect her from her teacher's sexual abuse.  Ms. Shriner seeks damages to compensate her for the District's violations of her right as a child and student to be free from gender discrimination including sexual harassment, sexual assault, retaliation, and a hostile educational environment.  At the time the sexual assaults occurred, Shriner was a minor girl attending Oil City High School ("OCHS"), an Oil City, Pennsylvania public

school.    Throughout her junior year of high school, OCHS teacher, Shaun McLoughlin ("McLoughlin"), sexually harassed, abused and assaulted her, and retaliated against her by systematically denigrating her in his interactions with the highest-ranking District officials, its school counselor, and with Ms. Shriner's fellow students.    The District had knowledge of a parade of improper conduct by McLoughlin, and explicit and scary information related to the sexual danger he presented to Ms. Shriner.    Despite this notice, and a policy which required the District to conduct an investigation, they did nothing to protect Ms. Shriner, or to prevent her teacher from repeatedly harassing and sexually abusing her. McLoughlin's open and notorious behavior was known by the superintendent and school administrators, the school counselor, and Ms. Shriner's personal counselor who for a period of months, provided explicit information to the District regarding the persistent sexual abuse danger she faced at the school.    In fact, Ms. Shriner's counselor and mental health providers warned the District prior to and during the time period McLoughlin carried out his assaults.    Yet, the Oil City Area School District did nothing to stop it.    In fact, the District took steps to increase McLoughlin's access to her and control over her.    In 2017, McLoughlin was criminally convicted in connection with his unlawful sexual abuse of Shriner.

2

## PARTIES

2.     Plaintiff Crystal Shriner (DOB February 19, 1998) is a citizen and resident of the Commonwealth of Pennsylvania and resides in Huntingdon County, Pennsylvania.

3.     Defendant Oil City Area School District ("Oil City" or "District") is a local government agency established and organized under the laws of the Commonwealth of Pennsylvania and a recipient of federal financial assistance.  Oil City operates the Oil City High School, which is a public school.  Oil City receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.  The Oil City Area School District's administrative office is located at 825 Grandview Road, Oil City, PA 16301.  The District operates Oil City High School which is located at 10 Lynch Blvd., Oil City, PA 16301.

## JURISDICTION AND VENUE

4.     This case arises under the Constitution and laws of the United States, specifically United States, specifically Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et. seq. and 42 U.S.C. § 1983. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

5.     Venue is properly laid in this district pursuant to 28 U.S.C. §1891(b)

3

because at least one defendant resides in this district and the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

6.     During the 2014-2015 school year, Shaun McLoughlin was an employee, agent or servant of the defendant District, serving as an English teacher and head of the Broadcast Club at Oil City High School.  The District employed McLoughlin in that capacity before, during and after the time period during which he sexually abused Ms. Shriner.

7.     At the beginning of the 2014-2015 academic year, Crystal Shriner was a 16-year-old Oil City High School sophomore.  Crystal was a "dependent" child who was placed in the Oil City-based Pathways' Adolescent Center's New Beginnings residential program.  According to Pathway's web site, the program's purpose is to "provide comprehensive care in response to the individual needs of troubled youth and their families in close cooperation with other service providers." (See https://pathwaysacenter.com/programs-information/pathways-programs-male-residential-program/).  The Oil City Area School District had been advised that Crystal had been sexually abused prior to becoming an Oil City District student.

8.     Before and during the 2014-2015 academic year, Project Point of Light ("PPL"), "a program that specializes in the assessment and treatment of . . . victims

4

of sexual abuse", provided mental health therapy to Crystal on an almost weekly basis. During the course of her treatment relationship with PPL's therapist and throughout the school 2014-15 school year, Crystal's PPL counselor remained in close contact with District officials.

9.     During the 2014-2015 academic year, the District had a policy prohibiting unlawful discrimination on the basis of gender, including a prohibition against District staff engaging in inappropriate sexual based discrimination toward a student. According to the policy, when the District receives information relating to a potential policy violation, the "building principal immediately shall notify the Superintendent or other designated administrator and shall conduct an impartial, thorough and confidential investigation of the alleged harassment or discrimination." The policy requires the principal to prepare a written report summarizing the investigation which is to be disseminated to the "complainant, the accused, the Superintendent and others directly involved, as appropriate." The policy requires the District to "take prompt corrective action to ensure the harassment and/or discrimination ceases and will not recur." As will be explained in more detail below, it is believed and therefore averred that the District failed to comply with its own policy despite being notified of potential violations on multiple occasions.

10.     On July 25, 2014, Crystal enrolled with the District to begin attending

Oil City High School in the Fall of 2014. Crystal's last day as an Oil City High School student was on May 4, 2015.

11. At the start of the 2014-15 school year, the District placed Crystal in Mr. McLoughlin's English class which met daily and his Literature Lab class which met every other day. From the very beginning of the year, Crystal felt and expressed to others, including her PPL counselor, that Mr. McLoughlin took a special interest in her and her welfare citing the special attention he paid to her and the intimacy of their contacts and conversations as evidence.

12. On or about September 16, 2014, Crystal sent an email to Mr. McLoughlin's school email account requesting to be placed in his Creative Writing class. The email was very personal and intimate in nature and revealed to him that she had previously been sexually abused and suffered significant hardship in her past.

13. Mr. McLoughlin believed that the District would discover the email and so on September 19, 2014, McLoughlin proactively disclosed it to OCHS guidance counselor Vera Campbell. Campbell and Mr. McLoughlin shared information regarding "[Crystal's] hardships" and her "previous abuses as a victim."

14. The District notified Pathways Director Jake McVey of the email and he reported it to Crystal's PPL counselor.

6

15.     On or about September 26, 2014, Mr. McLoughlin told Oil City High School counselor Vera Campbell that Crystal told him she "might have been sexually assaulted." Campbell in turn reported this to High School co-principal (now District Superintendent) Lynda Weller.

16.     On October 9, 2014, Crystal dropped Woodshop class and, after meeting with counselor Campbell, enrolled in McLoughlin's Broadcasting class which met every day. The Broadcasting class also met afterschool on most days and during the evenings when there was a school activity like a sporting event. Crystal remained in McLoughlin's Broadcast class until she left the High School in May 2015.

17.     About a month into the school year, McLoughlin began to groom Crystal for sexual abuse by engaging in conversations with her about her sexual abuse history which focused on asking her to share the graphic details of the sexual acts constituting the abuse. McLoughlin solicited details from her about what she was wearing, the specific sexual acts she was forced to engage in, and her body's reactions to these acts. McLoughlin encouraged Crystal to write him letters with these details telling her that he "visualized" the sexual acts she disclosed in the writings. McLoughlin regularly commented on Crystal's appearance and on one occasion, told her that her jeans left "no room for the imagination". McLoughlin

7

began to bring Crystal donuts every morning, telling her it was "something sweet for someone sweet."

18.    On October 28, 2014, Crystal sent this poem that she wrote for McLoughlin titled, "Letting You In" to his district email:





19.     McLoughlin told her that he knew the poem was about him and that she should not use his District email account prompting Crystal to share these kinds of intimate writings with him in written form.

20.     On October 29, 2014, believing that the District would discover the email, McLoughlin proactively disclosed it to counselor Campbell.   Campbell confronted Crystal about the poem telling her that it could be interpreted as her

"liking him" in a romantic way. Crystal, fearing that her relationship would be discovered, and that McLoughlin would get in trouble, became visibly upset.

21.     On November 10, 2014, Crystal reported to her mental health counselor that McLoughlin had been paying "special attention" to her and that she viewed him as both a romantic and father figure.

22.     In late November or early December, McLoughlin brought Crystal to the broadcasting booth above the school's auditorium. McLoughlin put his hand on her leg and left it there and later remarked that he was sorry if he "crossed boundaries".

23.     A few days later, McLoughlin brought Crystal to a private area near the booth, and Crystal began crying and sharing her emotions with him and that she felt "broken". McLoughlin took her hand in his and told her that "nothing is broken beyond repair". McLoughlin took both of Crystal's hands in his, looked her in the eyes and told her that she was "loved and beautiful". McLoughlin's tone quickly transitioned to overtly sexual. McLoughlin told her that she had "a very hot body" and said that "I'm not a cheater (he was married at the time), do you think we could fuck and then pretend nothing happened?" McLoughlin then placed his hand on the crotch of Crystal's leggings which he explained was to see whether she was "wet".

24.     On December 5, 2014, Crystal told her mental health counselor that she

and McLoughlin had a "mutual sexual attraction and tension" and that he (McLoughlin) was "very aware of the situation". Crystal also reported that Mr. McLoughlin made comments to her like she had "a very hot body" and that he was "not a cheater (he was married at the time), do you think we could fuck and then pretend nothing happened?"

25. On or before December 9, 2014, Crystal's PPL counselor notified the District's administration, including its superintendent Joe Corico, of these scary developments.

26. On December 10, 2014, Crystal told her PPL counselor that she used her "after school" time as a member of the McLoughlin-led Broadcast Club to spend alone-time with him, and that he was her "coping" mechanism. Crystal warned that she would react negatively, ranging from cutting herself to committing suicide, if she were forced to stay away from McLoughlin. It is believed and therefore averred that Crystal's PPL counselor shared this information with District officials.

27. On December 12, 2014, District officials and Crystal's PPL counselor met with McLoughlin at the High School and provided him with details of the December 11 meeting. The District concluded that it was Crystal who was a threat to McLoughlin and therefore formulated a plan to protect McLoughlin from her. The District's response was to relay what they knew to McLoughlin and, for his

11

protection, advised him not to spend time alone with her.

28.     McLoughlin later advised Crystal that her PPL counselor had reported their sexual conversations to the school which, presumably, the school shared with him.  McLoughlin repeated back to Crystal the details of what the school told him that she had told her counselor.

29.     Shortly after this meeting, then District Vice Principal (now superintendent) Lynda Weller met with McLoughlin and told him that she was going to "break confidence" by disclosing to him that Crystal was having "separation issues".  She told McLoughlin that he was "trustworthy", and that Crystal needed a "father figure" and that he should take this role.  Ms. Weller told him that Crystal was a "very volatile child" and that Crystal viewed him as "an authority figure, and that [he] will be good in her life."  McLoughlin believed that the District expected him to respond to Crystal when she reached out to him.

30.     In direct violation of its own policy, the District failed to conduct an investigation or take any other policy-mandated steps regarding McLoughlin's reported sexual statements.  Instead, the District decided to "let it ride" and on December 12, 2014, placed McLoughlin in charge of reporting Crystal's behavior to District administrators and her counselors.

31.     Around this time, McLoughlin created an email account to

12

anonymously communicate with Crystal. Crystal continued to write McLoughlin letters of a personal and intimate nature.

32.    Just prior to the Christmas Break, Pathways temporarily prohibited Crystal from participating in after-school activities which had the effect of limiting McLoughlin's after-school access to her.   On January 5, 2015, toward the end of the after-school activity prohibition, Crystal became visibly upset in Ms. Campbell's presence explaining that she had been unable to have alone time with McLoughlin. Campbell told Crystal that she was going to report the conversation to Pathways.  In her log, Campbell explained that she wanted to make sure "all were on the same page."

33.    Following this conversation, Crystal began participating in after-school activities again, and McLoughlin openly flaunted the District's earlier avoid-alone-time with Crystal admonishment.

34.    On January 14, 2015, Crystal prepared a collage of "inside jokes" for McLoughlin and gave it to him as a present.

35.    Toward the end of January 2015, McLoughlin's conduct toward Crystal became more overtly sexual. McLoughlin created a secret messaging account to communicate inappropriately with Crystal.  During the school day, McLoughlin gave Crystal his cell phone and instructed her to go to the bathroom or a nearby book

closest and to take nude pictures of herself. McLoughlin manipulated Crystal's school activity schedule to maximize his alone-time access to her.

36. In the mornings, during free periods and lunches, Crystal spent time with McLoughlin in his classroom – most often alone. McLoughlin regularly brought food in for her, and provided Crystal with excuse notes if she was late to her other class as a result of spending mornings alone with him in his classroom.

37. McLoughlin also arranged to be alone with Crystal on a regular basis following afterschool and evening school activities. McLoughlin waited alone with Crystal for Pathway's van to pick her up from evening actives, often after 9:00 pm. District administrators who regularly attended these events saw the two of them together and left before Crystal and McLoughlin did. On one occasion, fearing that the school would find out about their relationship, McLoughlin reported to the District that he had been alone with Crystal at the school late into the evening because the van didn't arrive until 10:30 pm.

38. From late January through the end of her time as an Oil City High School student, McLoughlin sexually abused Crystal on an almost daily basis. The abuse consisted of groping her breasts and genitals, digitally penetrating her, requiring her to give him oral sex, requiring her to take nude photos of herself and share them with him, and engaging in sexual intercourse with her. The abuse

14

occurred in various areas of the school including: in a small semi-soundproof room and in a storage closet within the broadcasting area of the school; in the girls' locker room, and; in the broadcasting booth above the auditorium.

39. McLoughlin ensured that Crystal would keep his abuse secret by telling her that she'd be kicked out of school and he would lose his job if it became public.

40. Nonetheless, McLoughlin spent so much alone time with Crystal, that members of school community began to openly speak about the two of them being involved in a sexual relationship.

41. McLoughlin advised Crystal that he was going to preemptively report these discussions to the District and that he would (falsely) blame her for starting these rumors. He also told Crystal to speak with Ms. Campbell after his meeting to "fix" things and that he would withhold his affection from her if she didn't.

42. On March 18, 2015, in accordance with his plan, McLoughlin met with Campbell and told her that it was likely that she and other District officials would hear from students and others that he was involved sexually with Crystal. McLoughlin told Campbell that Crystal was responsible for spreading these "false" rumors.

43. The next day, and in accordance with McLoughlin's demand, Crystal told Ms. Campbell that she was worried that McLoughlin would get in trouble, that

she didn't want to get him in trouble, and offered to apologize to him, and then told Campbell that the romance she had been talking about involved another student and teacher.

44.    Following the meeting with Crystal, Campbell wrote in her log that she was "uncertain how to proceed". Despite being told that the administration would likely hear people discussing the existence of a sexual relationship between McLoughlin and Crystal, and that Crystal had told others that she and McLoughlin were romantically involved, the District violated its own policy by failing to initiate an investigation.

45.    Instead, the District took no action and Ms. Campbell dismissed the reports as nothing more than Crystal creating "drama".

46.    On March 24, 2015, no doubt emboldened by the District's inaction, McLoughlin brazenly sexually assaulted Crystal – he had sexual intercourse with her in the broadcasting room storage closet while other broadcast club students were in the next room. One student continually attempted to interrupt them by knocking on the door and walking into the closet.

47.    In April of 2015, McLoughlin had sexual intercourse with Crystal in the girls' locker room.

48.    On or about May 1 or 2, 2015, Crystal and another student engaged in

16

sexual activity in the Broadcast room which started off consensually and became nonconsensual. Crystal advised Pathways' staff of the incident and told another student who, in turn, reported the incident to McLoughlin. McLoughlin angrily confronted Crystal about it and warned her that his inappropriate conduct with her could be discovered if there was an investigation of the incident. McLoughlin warned Crystal that she needed to "protect" him after which she retracted the allegation and as a consequence, Oil City High School removed her as a student.

49. Following a May 17, 2015, therapy session, Crystal's counselor documented that she remained "fixated on him (McLoughlin)", wanted to "marry" him, and "expressed hostility towards his wife."

50. On June 23, 2015, Crystal was removed from Pathways and sent to a foster placement in Mt. Union, Pennsylvania. McLoughlin created a secret means of communicating with Crystal through the use of computer apps.

51. McLoughlin continued to communicate with Crystal following her removal from the High School using the email account he had previously established, "somebodywhocares1999@gmail.com", and apps like "Couple" and "Gruvea".

52. On June 16, 2015, Crystal's then foster mother reported to Children and Youth Services that she discovered emails between McLoughlin and Crystal in

17

which McLoughlin used his personal email and the "somebodywhocares1999@gmail.com" account. According to the foster parent's report, the emails demonstrated "too close of contact" between Crystal and McLoughlin and that she felt that the "teacher has crossed the line on teacher and student boundary."

53. Although Children and Youth Services reported the inappropriate and concerning communications to the District, they undertook no investigation of their own and never questioned McLoughlin or Crystal.

54. As a result of, and emboldened by, the District's failure to take any actions to protect Crystal, McLoughlin traveled to Huntingdon County just prior to the beginning of the 2015-2016 school term and to Centre County in May 2016 and had sexual intercourse with Crystal.

55. In August of 2016, Crystal reported the sexual abuse to Children's Services who in turn, reported it to the Oil City Police Department which initiated a child sexual abuse criminal investigation on August 9, 2016.

56. On August 23, 2016, Crystal participated in a video-taped interview with a Children's Advocacy Center forensic social worker detailing McLoughlin's abuse. Crystal subsequently participated in several police interviews and provided statements outlining McLoughlin's sexual abuse.

18

57.     In the months that followed, the Pennsylvania Department of Education took action against McLoughlin's teaching license finding that the allegations of an inappropriate relationship with a student constituted probable cause for disciplinary action.  On August 14, 2017, Mr. McLoughlin executed an Affidavit of Surrender whereby he surrendered his Pennsylvania teaching certification and future employment eligibility.

58.     On July 31, 2017, McLoughlin plead guilty to Corruption of Minors.

59.     McLoughlin's conduct was outrageous, open, and notorious, such that his pattern of behavior was known by administration, teachers, and students.

60.     Oil City Area School District failed to take reasonable steps to protect Crystal from McLoughlin's sexual misconduct even though their highest level of officials knew or should have known about the danger he posed to her.

61.     Despite the extraordinary and unreasonable risk of harm to Crystal posed by McLoughlin, Oil City provided McLoughlin continuous and increasing access to her and control over her.

62.     Although the District received specific information that McLoughlin had been engaging in inappropriate sexual conduct with Crystal (then 16 years old) on multiple occasions and at least as far back as December of 2014, the District allowed him to, and indeed requested, that he continue to supervise, monitor and

19

control Crystal. The District undertook no investigation of the underlying allegations despite, and in violation of, its policy requirements and their knowledge that McLoughlin was spending time alone with Crystal in the school.

63. As a result of McLoughlin's sexual abuse and the District's failure to take reasonable steps to protect Crystal from that abuse, Crystal has suffered and will continue to suffer from severe emotional, psychological, physical, and financial harm, including, but not limited to, pain, mental anguish, anxiety, humiliation, loss of self-esteem, loss of enjoyment of life, fear, loss of earnings and earning capacity.

64. The Defendant's conduct was and continues to be a substantial factor in bringing about the severe and permanent harm Crystal has suffered and is continuing to suffer.

65. The Defendant's was wanton and outrageous and demonstrates a reckless indifference to Crystal's rights, including her right a public education.

## COUNT I
## PLAINTIFF vs. OIL CITY AREA SCHOOL DISTRICT
## CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983

66. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

67. Defendant McLoughlin's sexual abuse, the sexual assaults, inappropriate sexual contact, groping, molesting and grooming and Oil City's

20

deliberate indifference to the danger he presented violated the Plaintiff's Fourteenth Amendment right to bodily integrity.

68.    Oil City's deliberate indifference included, but was not limited to:

- Failing on multiple occasions to properly and timely investigate McLoughlin's relationship with Ms. Shriner;

- Failing to adequately supervise McLoughlin's and Ms. Shriner's relationship;

- Failing to address allegations that McLoughlin engaged in misconduct with regard to Ms. Shriner;

- Placing McLoughlin in a position of trust and control with respect to Ms. Shriner's welfare after being notified of sexual abuse allegations against him;

- Permitting, indeed requiring, McLoughlin to remain as Ms. Shriner's teacher and supervisor of after school and extra-circular activities after being notified of sexual abuse allegations against him;

- Delegating to McLoughlin the duty to report on Crystal's behavior to school administrators and her counselors even after being notified of sexual abuse allegations against him;

- Failing to enforce their own admonition to McLoughlin that he should not be alone with Ms. Shriner and failing to take action when they knew that he was, in fact, spending time alone with her;

- Failing to timely investigate or take any proper disciplinary action against McLoughlin, who the District knew, or should have known, posed a significant threat to Shriner's health, safety and welfare;

- Failing to monitor McLoughlin's activities despite actual knowledge that he posed a significant threat to Shriner;

- Failing to take timely steps to prevent contact by McLoughlin with Ms. Shriner after actual notice of improprieties, and;

- Failing to follow proper policies and procedures to ensure identification, reporting and investigation of sexual abuse of students by teachers.

69.     To the extent there was a District plan, policy, practice, or custom to investigate, discourage, prevent, or punish such instances of misconduct, the District, through its highest-level decision makers made a conscious and deliberate determination not to enforce such policy or plan after receiving notification of the instances of improper, inappropriate, and unprofessional contact between, or conduct by, McLoughlin and Shriner, as set forth in the preceding paragraphs.

70.     At all material times, the District acted under color of state law and the School District acted through its administration, school board members and other agents, servants and employees.

71.     The District's deliberate indifference and failure to follow its policies, as set forth above, created a climate in which Mr. McLoughlin could and did prey upon Shriner with impunity.

72.     As a direct and proximate result of the aforesaid District customs, practices, and/or policies, Crystal Shriner was deprived of her rights, privileges and immunities secured by the constitution or laws of the United States, specifically her

22

liberty interest in personal bodily integrity and freedom from sexual assault and abuse guaranteed under the Fourteenth Amendment to the United States Constitution.

73.     As a result of the District's violation of Ms. Shriner's constitutional rights, she has suffered in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment, humiliation, and emotional and physical distress.

**WHEREFORE,** Plaintiff seeks damages, against Defendant, in an amount in excess of $75,000, including costs of suit, interest and attorney's fees and such other relief as this Honorable Court deems appropriate.

**COUNT II**
**PLAINTIFF vs. OIL CITY AREA SCHOOL DISTRICT**
**VIOLATION OF TITLE IX, 20 U.S.C.§ 1681**

74.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

75.     Crystal Shriner, on the basis of her sex, was denied benefits and/or subjected to discrimination under an education program or activity receiving federal funding.

76.     The sex-based harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits

provided by the school. This includes, but is not limited to, Crystal being forced to leave the school, and suffering emotional, psychological, and academic and adverse disciplinary consequences.

77. The District created and/or subjected Shriner to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because: a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault and sexual harassment by a teacher; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by Oil City's lack of policies and procedures and/or failure to properly investigate and/or address the sexual assault and subsequent harassment.

78. The District and its officials had actual knowledge of McLoughlin's sexual misconduct and sexual harassment of Shriner.

79. Shriner was further denied benefits and/or subjected to discrimination under an education program or activity receiving federal funding due to the District's failure to investigate and discipline McLoughlin in a timely manner, after having knowledge of allegations that McLoughlin subjected Shriner to sexual misconduct and harassment.

80. Oil City's failure to promptly and appropriately respond to the sexual

misconduct resulted in Shriner, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education programs in violation of Title IX.

81. The District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Shriner.

82. Instead of acting to protect Ms. Shriner, the District, aware of allegations of sexual contact between McLoughlin and Shriner, acted to blame Ms. Shriner and retaliate against her when presented with allegations that her teacher was engaged in sexual misconduct against her.

83. Instead of following its own policy with respect to investigating allegations of sexual misconduct, the District, aware of allegations of sexual contact between McLoughlin and Shriner, blamed Ms. Shriner and deliberately refused to initiate an investigation which its policies required it to undertake.

84. Based upon the foregoing violations of Title IX of the Education Amendments of 1972, 20 U.S.C.§1681, et. seq., Crystal Shriner has suffered in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment, humiliation, and emotional and physical distress.

**WHEREFORE,** Plaintiff seeks damages, against Defendant, in an amount in excess of $75,000, including costs of suit, interest and attorney's fees and such other relief as this Honorable Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask the Court to enter judgment in her favor and against the Defendant and to award her the following relief:

A)     general and compensatory damages;

B)     attorney fees and costs; and

C)     such other relief as the Court deems just and equitable.

Respectfully submitted,

January 28, 2021

/s/ Andrew J. Shubin
Andrew J. Shubin, Esquire
Pa. Attorney ID No. 63263
333 South Allen Street
State College, PA 16801
(814) 867-3115
(814) 867-8811 fax
shubin@shubinlaw.com
*Counsel for Plaintiff,*
*Crystal Shriner*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRYSTAL SHRINER** | : | **CIVIL ACTION NO.** |
| **Mount Union, PA 17066** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OIL CITY AREA SCHOOL DISTRICT** | : | |
| **825 Grandview Road** | : | |
| **Oil City, PA 16301** | : | |
| | : | |
| **Defendant.** | : | |

## CERTIFICATE OF SERVICE

I, Andrew J. Shubin, do hereby certify that the above parties were served a true and correct copy of the foregoing Complaint via electronic and U.S. Mail to Jaime N. Doherty, Esquire, Counsel for Defendants.

January 28, 2021

/s/ Andrew J. Shubin
Andrew J. Shubin, Esquire
Pa. Attorney ID No. 63263
333 South Allen Street
State College, PA 16801
(814) 867-3115
(814) 867-8811 fax
shubin@shubinlaw.com

*Counsel for Plaintiff,
Crystal Shriner*